# IDA C. McNAB et al. vs. THE UNITED RAILWAYS, ETC., CO.

*Driving Across Tracks of a Suburban Electric Railway Without Looking—Contributory Negligence—Last Negligent Act.*

A country road crossed at right angles a turnpike road upon which were the double tracks of defendant's electric railway. The rails were spiked to cross-ties ; the road-bed was ballasted with stone and cars ran thereon at a speed of more than twenty miles an hour. Plaintiff drove in her phaeton at a trot along the country road to the turnpike when, slowing down but not stopping, she looked to see if a car was coming from one direction on the track nearest to her. Seeing no car on that track and hearing no gong sounded, plaintiff drove across the road and when her horse was in the space between the two tracks she saw a car forty feet distant approaching at a high rate of speed from the

other direction. Plaintiff's horse was gentle and accustomed to the cars and she was then in a place of safety. Instead of stopping or backing plaintiff whipped up her horse and attempted to cross in front of the car which struck the rear wheels of the carriage, thereby throwing plaintiff out and causing an injury. *Held*, that although the defendant was negligent in not sounding the gong upon approaching the cross-road, yet the plaintiff's contributory negligence, as above set forth, is such as to bar her right of action.

The rule that although a plaintiff may have been guilty of contributory negligence, yet he is not prevented from maintaining an action if the defendant could have avoided the injury after seeing plaintiff's peril, is only applicable when defendant's negligence is the last negligent act and not when plaintiff's contributory negligence is the final negligent act.

Appeal from a judgment of the Baltimore City Court (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Edward L. Ward*, for the appellants.

The prayer of the defendant must be considered as a demurrer to the plaintiff's testimony, and when you consider all the facts as proven, how cautiously the plaintiff approached the crossing, looking and listening all the time, bringing her horse to a stop or a slow walk, which amounts to the same thing, and that her view to the west from which the car was approaching, was obstructed by trees and shrubbery, and that the car which caused the accident was not running on the north track close to the trees so as to cause them to move, and attract the attention of travellers in this way, but was approaching on the south track, which made it more difficult to see or hear, unless some warning was given, and that the car was approaching an established public crossing on a down grade at the rate of 20 or 25 miles an hour, that it did not ring its bell, that it did not slacken its speed at all, and thus absolutely disregarded the regulations of the company posted at the crossing, it would seem, that the defendant's servants were guilty of such gross negligence as to plainly justify the Court in submitting the case to the jury for their considera-

tion.  The motorman was bound to know the regulations of
his own company posted at this crossing, and the public had
a right to depend upon these rules and regulations being car-
ried out, and was not to assume that they were posted in or-
der that the public might rely upon them, and then to be ab-
solutely disregarded by the defendant's servants and employees.
When the plaintiff approached the crossing and neither saw
nor heard a car approaching after looking and listening,
she had a right to proceed to cross the tracks; relying upon
these notices and regulations, and assuming that the com-
pany's servants and employees would not disregard them, but
would give notice of the approach of a car, which if they had
done, would have prevented the accident.  Had the motor-
man sounded his bell and slackened his speed according to
these notices or regulations established by the company, the
plaintiff would have been warned of the approach of the car,
and would have heeded it, for she was looking and listening for
approaching cars, and if she had then proceeded to cross in
the face of the warning, an altogether different question would
have arisen.  *Woodland* v. *Ry. Co.*, 49 Atl. R. 479; *Dennis*
v. *N. J. St. Ry. Co.*, 64 N. J. L. 439; *Cooke* v. *Traction Co.*,
80 Md. 551; 2 *Thompson on Negligence*, 1173; *Traction Co.*
v. *Wallace*, 77 Md. 412.

Even if the plaintiff was guilty of contributory negligence,
the case should have been submitted to the jury upon the
theory, that the defendant's servants could have prevented the
accident by the use of ordinary care and prudence; after the
motorman saw the carriage or by the exercise of reasonable
diligence could have seen it.  *Lake Roland Co.* v. *McKewen,*
80 Md. 593; *B. & O. R. Co.* v. *State*, 36 Md. 366; *Traction*
*Co.* v. *Appel*, 80 Md. 603; *Western Md. R. Co.* v. *Kehoe;* 83.
Md. 453; *N. B. R. Co.* v. *Arnreich,* 78 Md. 589; *Traction Co.*
v. *Helms*, 84 Md. 515.

*Geo. Dobbin Penniman* (with whom was *Fielder C. Slingluff*
on the brief,) for the appellee.

The question involved in this case is:

Shall not a driver approaching a crossing over suburban electric railway tracks, on which cars are authorized to run at great speed, be compelled to observe the precautions necessary at a steam railway crossing, namely, looking and listening, and if necessary, stopping to get a clear view of the tracks before attempting to cross?

*First.* The appellant knew that she was approaching a rapid transit crossing, and that the cars were lawfully operated on tracks similar in construction to steam railroads, and were necessarily run at a high speed to afford a proper service between Baltimore and Catonsville. The motormen were required to ring their bells and control their cars at the crossings, but the appellant was not entitled to absolutely rely upon their proper observance of these rules ; she was bound to watch to protect herself, and not to wholly depend on diligence of the railway employees.

*Second.* The appellant knew that a car was not approaching from the east, and, therefore, there was nothing to distract her from looking to the west for the east-bound car.

*Third.* The appellant had ample room (over sixteen feet) to stop her horse in a position of complete safety, and to see the approaching car before she drove on the track ; or even if she had slacked the speed of her horse to a slow walk, she could have seen the car and have stopped the horse in the sixteen feet of space where a clear view of the car could be obtained.

*Fourth.* The appellant admits that her horse was nearly on the track when she first saw the car, thereby showing that she did *not* look for the car when there was ample opportunity to see it, for the track was perfectly straight, and her view unobstructed when the horse got on the *north* rail of the *north* track, according to her own witnesses.

*Fifth.* And as a most conclusive admission of negligence, the plaintiff said that her horse was not nervous, was not afraid of cars, would not mind the car passing just in front of her ; that when she saw the car the horse was *nearly* upon the east-bound track on which the car was running. And

yet the mare is not jerked back to stop her. She is not pulled to one side. She is not even checked so that her life alone would be risked. On the contrary, she is struck with the whip, and with a jump, she *goes forward* and immediately pulls the carriage and its occupant from a position of absolute safety, into a position of absolute danger, *i. e.*, between the rails of the east-bound track. But for that blow of the whip the appellant would not have been hurt.

The simple question is : Was not the plaintiff bound to observe the usual precautions at a rapid-transit crossing, be it steam or suburban electric, of looking and listening, and if necessary stopping, so that she could *by her own eyesight* be sure that a car was not approaching ? If this crossing had been over tracks of a steam railroad, Maryland decisions would alone conclusively settle the question that the appellant was bound to adopt these precautions.

As far as we can ascertain this Court has never been called upon to apply these rules to suburban electric railways running on heavily ballasted tracks at a much greater speed than the speed authorized in the crowded streets of the city. The rule which has been applied to the city street cars obviously cannot be adopted here because the conditions are entirely different and the growing needs of a rapidly increasing suburban population, living at considerable distances from the business centres, demands a construction of track and a weight and speed of cars which would make the application of the rule impossible. The few decisions which have considered this question adopt the rule which has been applied to steam roads, and hold that a person driving across a rapid-transit suburban track must observe the precautions of stopping, looking and listening, and that a failure to observe these requirements will be treated as contributory negligence *per se. Smith* v. *N. O. Ry. Co.*, 48 La. An. 1; *Hoelzel* v. *Crescent City R. Co.*, 49 La. An. 1302; *McGee* v. *Consol. Co.*, 102 Mich. 107; *Carson* v. *Ry. Co.*, 15 L. R. A. 257; *Md. C. R. Co.* v. *Neubeur*, 62 Md. 401.

McSHERRY, C. J., delivered the opinion of the Court.

This is a negligence case. The suit was brought by Mrs.

Ida C. McNab and her husband against the United Railways and Electric Company of Baltimore City to recover damages for an injury sustained by Mrs. McNab. The injury was caused by a car of the Railway Company colliding with a vehicle driven by Mrs. McNab ; and it occurred at a point where a public thoroughfare intersects and crosses the tracks of the appellee's railway in Baltimore County. The case was taken from the jury by the trial Court on the ground that the plaintiff had by her own negligence, directly contributed to the injury which happened to her ; and in obedience to the Court's instruction a verdict was rendered in favor of the company. From a judgment entered thereon the pending appeal was taken, and the single question is, was the Court below right in withdrawing the case from the jury ?

The position taken by the appellee in this Court as well as in the Court below concedes that the railway company's employees were guilty of negligence ; and the contention is and was that there can be no recovery because Mrs. McNab by her own negligence contributed to the infliction of the injury which befell her. Contributory negligence is simply negligence, and is, like primary negligence, relative and not absolute, and being relative it is dependent on the peculiar circumstances of each particular case. There are many acts which would not be negligent when done under some conditions, though the same acts if done under different conditions might be highly negligent. And this is equally true of contributory negligence. So, ultimately, in every case of this character it becomes necessary to view the entire surroundings to determine whether either primary or contributory negligence has been established.

Woodlawn avenue in Baltimore County intersects at right angles the Frederick turnpike road. The turnpike road runs east and west and Woodlawn avenue, which is sixty feet wide, runs north and south. The tracks of the Electric Railway Company are laid along the north side of the turnpike road. Cars going eastwardly, that is, towards Baltimore City, run on the south track, or the track farthest away from the

northern margin of the turnpike road. The regulations of the company require that a gong shall be sounded by the motorman upon approaching this crossing. On the afternoon of July the twenty-ninth, eighteen hundred and ninety-nine, about two-thirty, Mrs. McNab in company with another lady was driving in an open phaeton along the centre of Woodlawn avenue southwardly towards the Frederick turnpike road and, therefore, towards the car tracks. These tracks are built like the tracks of a steam railway. The rail is a T rail spiked to cross-ties and the road-bed is ballasted with broken stone. The construction out in the open country, where this accident happened, is altogether different from that upon the city streets where flat rails are used and where no cross-ties are visible. The rate of speed at which the cars run in the country is from twenty to twenty-five miles an hour, whilst that permitted in the city is very much less. The danger of collision with a car is far more imminent when crossing these tracks in the country than it is when driving over or along street railway tracks in a city; and this is so because of the difference in the speed of the cars and in the construction of the road-bed. As Mrs. McNab approached the tracks her horse was in a trot. She slowed down, but did not come to a stop. She looked to see if a car was approaching from Baltimore—that would be a car going westwardly on the north track, or the track nearest to her. Seeing no car on that track and hearing no gong sounded she drove forward and when her horse got in the space between the north and south set of tracks, she saw a car approaching at a high rate of speed on the south track, going towards Baltimore and not more than forty feet distant from her. The horse she was driving was perfectly gentle and accustomed to cars. The place the plaintiff was in when she saw the approaching car was a place of safety so far as any danger from that car was concerned. Instead of stopping or backing the horse or turning its head aside so as to let the car pass entirely clear of the horse, she gave the horse a stroke with the whip that she carried and attempted to cross the south

track in advance of the car then rapidly moving towards her on that same track. The horse got across but the car struck the rear wheels of the carriage and threw both occupants out upon the turnpike road, considerably bruising and hurting Mrs. McNab. Upon cross-examination Mrs. McNab was asked whether the mare she was driving was afraid of the cars; and she answered "not at all, and she is not afraid yet." She was also asked, "You knew the cars could pass her without her being afraid;" and her reply was, "yes, sir." The following question was then put to her: "Then there was nothing as far as the mare's nervousness was concerned, which would prevent you pulling her back and letting the car pass in front?" And her answer was: "Nothing at all, only I never back if I can go forward." It is perfectly obvious from the plaintiff's own testimony that when she saw the approaching car she was in a place of safety; that by staying for a moment where she then was she would not have incurred any risk of injury either from the car or from the frightening of her horse; that there was no reason whatever for her not stopping or not remaining in that place of safety, other than her indisposition to back if she could go forward; and that she deliberately went forward in the face of an imminent and apparent danger because she thought she could get across the south track before the car running on that track reached the point at which she was crossing. This was sheer recklessness. No matter how negligent the company's servants may have been in failing to give signals or warnings of the approach of the car to the crossing, Mrs. McNab, after she saw the danger of leaving a place of safety and of attempting to cross directly in front of the rapidly moving car, was, when she drove forward, equally guilty of negligence which immediatetly contributed to the infliction of the injury which she sustained; and that contributory negligence is a bar to a recovery on her part. *Philada. & B. C. R. Co.* v. *Holden,* 93 Md. 417; *State, use of Dyrenfurth* v. *B. & O. R. R. Co.,* 73 Md. 374; *P. W. & B. R. Co.* v. *Hogeland,* 66 Md. 149.

But it has been suggested that however this might be had

the collision occurred at the intersection of a steam railroad track and a public highway, it cannot be the law of this case because the injury was inflicted by an electric railway car; and the cases of *W. Md. R. R. Co.* v. *Kehoe*, 83 Md. 435; *Cooke* v. *Balto. Trac. Co.*, 80 Md. 551; *Lake Roland Co.* v. *McKewen*, 80 Md. 593, have been cited to sustain this supposed distinction. It is not because of a difference in the motive power employed upon a steam and an electric railway, but because of other circumstances that acts which would be regarded as acts of contributory negligence in the one instance would not be so treated in the other. It is far more dangerous to attempt to cross in advance of a car moving at a high rate of speed, whether propelled by steam or electricity, than to make a like attempt when the car is moving along the streets of a city at a very moderate rate of speed. The difference in the method of the construction of the tracks in the country from that in the city; the very marked difference in the speed attained in the one locality from that tolerated in the other; the adaptation of city streets to the uses of pedestrians and vehicles of all kinds as well as to the cars, are all circumstances, wholly apart from what the motive power propelling the cars may be, which must be considered in determining whether a given act is or is not an act of contributory negligence. Thus to drive across a street car track at the intersection of two streets in a city where the rails are flat and offer no resistance, might not be an act of contributory negligence even though an approaching car going at the rate of six miles an hour but required to stop or slow up on the near side of the intersected street, were but forty feet distant; but to make the same attempt in the country where T rails themselves interpose obstructions and where the car is running at the same high rate of speed which cars propelled by steam attain, would be just as clearly an act of contributory negligence as it would be were the car being moved by steam power instead of by electricity. A car making six miles an hour can be slowed or stopped much more promptly than when making twenty-five miles an hour, and this circumstance

is of considerable importance in determining whether an attempt to cross in front of it is an act of contributory negligence.    It is the relation which the act done bears to the final result in the light of all the attendant circumstances that determines whether the act so done is or is not one of negligence or of contributory negligence.    We do not deem it necessary to quote adjudged cases, much less to go outside of our own reports to cite decisions, on this question of contributory negligence.    Upon the most obvious principles the conduct of Mrs. McNab, as testified to by herself, shows such a clear case of contributory negligence that there is no room to dispute its existence if the accident had happened at a steam railroad crossing.    The conditions as to construction, location and speed and the danger incident to crossing the tracks being precisely the same in this instance as they would have been had the motive power been steam, the legal principles defining contributory negligence cannot be different merely because the motive power was electricity.    The cases cited above distinguish between a *street* railway *in a city* and a *steam* railway *in the country;* but they do not justify the pushing of that distinction to the extent of holding that there is such a difference between an electric railway *in the country* and a steam railway as to change what would be contributory negligence as respects the latter into non-contributory negligence or due care as respects the former.

There is nothing in the suggestion that even though Mrs. McNab was herself guilty of negligence, the company's servants were blamable because they made no effort to avoid the consequences of her negligence.    And there is nothing in the suggestion because the *last* act of negligence was committed by Mrs. McNab.    The doctrine here invoked presupposes that the company's employees knew or by the use of due care could have known, the peril in which the injured party had by her own negligence placed herself; and that they either knew or could have known of that peril in time to avert the injury. *W. Md. R. R. Co.* v. *Kehoe,* 83 Md. 424.    When the motorman saw—and we may presume that he did see, because he

could have seen—that Mrs. McNab was in a place of safety, he was under no obligation to assume that she would deliberately leave that place and drive into the jaws of danger. As said by this Court in *Neubeur's case :* "But it was not the duty of those in charge of the train to anticipate the conduct of the plaintiff, and because they saw him approach the crossing to conclude that he would attempt to cross in advance of the train. On the contrary, they were, or would have been, fully justified in supposing that he would not venture to cross until after the passage of the train." *Md. Cent. R. R. Co.* v. *Neubeur,* 62 Md. 401. There is not the faintest gleam of evidence to show that the motorman could have stopped the car or checked its speed so as to avoid the collision after Mrs. McNab drove upon the track on which the car was moving. The doctrine is only applicable when the company's negligence in not avoiding the consequences of the plaintiff's negligence is the *last* negligent act. It can never be invoked when the plaintiff's own act is the *final* negligent act.

As we find no error in the instruction given to the jury, the judgment must be affirmed with costs, and it is so ordered.

*Judgment affirmed with costs.*

(Decided March 6th, 1902.)