# CHARLES T. WALTRING

## vs.

## HARRY B. JAMES.

*Automobile Injuring Pedestrian—Evidence as to Speed—
Damages—Earning Power of Plaintiff.*

In an action against the owner of an automobile for running down a pedestrian, *held* that there being a conflict in the evidence as to whether plaintiff was guilty of contributory negligence, it was error to direct the jury to render a verdict for defendant on that ground.                                        p. 413

In an action for injuries caused by defendant's automobile striking plaintiff while walking across a driveway leading up to a railroad station, *held* that it was for the jury to determine whether defendant was guilty of negligence, there being evidence that the automobile was running at an excessive speed, that no signal was given, and that it shot out from behind another automobile and passed it at a high rate of speed on the driveway, on which many persons were walking.           p. 413

Where the nature and attributes of the act relied on to show contributory negligence can be correctly determined only by considering all the attending and surrounding circumstances, it is for the jury to characterize it.                          p. 414

Witnesses of the accident may properly testify as to the speed of defendant's automobile at the time it struck plaintiff.  p. 415

A witness who was on the station platform when plaintiff was run down by defendant's automobile on the driveway leading to the station was competent to testify on which side of the station automobiles were stopping.                       p. 415

In an action for personal injuries, evidence as to what plaintiff had earned in certain temporary employments was properly excluded, this not forming a proper basis for estimating his earning capacity.                                        p. 416

*Decided June 16th, 1920.*

Appeal from the Circuit Court for Baltimore County (Mc-LANE, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*A. F. Brown* and *James J. Archer,* with whom was *Elmer J. Cook* on the brief, for the appellant.

*Philip H. Close,* with whom were *T. Scott Offutt* and *S. A. Williams* on the brief, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The record in this case contains sixteen bills of exceptions to the action of the Court in its rulings upon the admissibility of testimony and upon the prayers reserved by the plaintiff at the trial in the Court below.

The suit was brought by the appellant, the plaintiff below, against the appellee, the defendant, in the Circuit Court for Harford County, but removed to the Circuit Court for Baltimore County where, upon trial, a verdict was rendered in favor of the defendant, and from a judgment on this verdict the plaintiff has taken this appeal.

The plaintiff's declaration sets out the cause of action and is as follows: For that the defendant was the owner of an automobile which was so carelessly and negligently used and operated by the defendant, his agent or servant, on one of the public streets in the City of Havre de Grace, in said Harford County, Maryland, at a highly excessive and unlawful rate of speed, and on the left of the center of the said public street, on or about the 18th day of April, 1918, so that in consequence thereof, the said automobile of the defendant struck and seriously injured the plaintiff, who was lawfully crossing said street in the exercise of ordinary care, in consequence of which the plaintiff was thrown down and run over by said automobile, his right shoulder broken, his left shoulder blade broken, his nose smashed, his lung punc-

tured, his face torn open and a portion of his scalp torn loose, and other parts of his body bruised and lacerated so that he was seriously and permanently injured by reason of said physical injuries, and shock caused thereby to his nervous system.

And the plaintiff claims therefore thirty thousand dollars' damages, and hence brings this suit.

At the close of the testimony, on the part of the plaintiff and the defendant, the Court below withdrew the case from the jury, by granting the defendant's second prayer, which directed a verdict for the defendant upon the ground, "that under the pleadings it appears from the uncontradicted evidence in the case that the negligence of the plaintiff directly contributed to the happening of the accident complained of and their verdict must be for the defendant."

The defendant's special exception to the plaintiff's first prayer was granted, upon the ground there was no evidence in the case legally sufficient to support the hypothesis of the prayer, to wit, that the injury referred to in this prayer resulted directly from the want of ordinary care and prudence on the part of the driver of the defendant's automobile.

The rules of law bearing upon negligence and contributory negligence have so often and recently been announced by this Court, in similar cases to the one now before us, that a mere reference to a few of the cases should be sufficient to establish the general rule by which questions of this character must be determined. *Burke* v. *Baltimore City,* 127 Md. 560; *Hempel* v. *Hall,* 136 Md. 174; *Central Railroad* v. *Coleman,* 80 Md. 337; *Mayor and C. C. of Baltimore* v. *Mattern,* 133 Md. 16.

In *McNab* v. *United Rys. Co.,* 94 Md. 724, this Court said: "Contributory negligence is simply negligence, and is, like primary negligence, relative and not absolute, and being relative it is dependent on the peculiar circumstances of each particular case. There are many acts which would not be negligent when done under some conditions, though the

same acts, if done under different conditions might be highly negligent. And this is equally true of contributory negligence. So, ultimately, in every case of this character it becomes necessary to view the entire surroundings to determine whether either primary or contributory negligence has been established."

As the action and ruling of the Court in this case, in granting the defendant's prayer, directing a verdict for the defendant, presents the principal and important question in the case, it will be considered by us before passing upon the questions raised by the exceptions to the rulings of the Court upon evidence.

The material facts of the case are these: The plaintiff was a resident of Louisville, Kentucky, and on the day of the accident was attending the races at Havre de Grace, Harford County. He was returning from the race track to the station of the Pennsylvania Railroad at Havre de Grace, a distance of about a mile and a quarter, to take the train to Baltimore and, while crossing the driveway leading up to the station, was struck by the defendant's automobile before reaching the station, which was engaged in transporting passengers between the race track and the station. The automobile was a seven-passenger Studebaker, owned by the defendant and in charge of a chauffeur, hauling passengers for hire between the race track and the railroad station, and was approaching the station at the time of the accident with a load of passengers.

The location of the station, the driveway, and the streets, is shown upon a drawing set out in the record, and it appears therefrom that the plaintiff was struck while proceeding to cross the road or driveway, which was about twenty-five feet in width and leading up to the station.

The plaintiff testified that, on the day of the accident, he walked from the race track toward the Pennsylvania Railroad station in Havre de Grace, after the races, and that he walked down this path, "A and B," toward the railroad sta-

tion. "Q. When you got to the point 'B,' tell us what you did? A. When I came down this pathway I was speaking with a friend of mine; when we came here (indicating the intersection of the path with the roadway) I looked down this way for automobiles, as I always do, and looked this way (indicating). I didn't stop, however, I walked slowly and looked down, looking this way; I looked down the street this way, the full length of the street to this turn here (indicating); I looked down to it; I was looking right down at it; and I looked down the street like that (indicating), straight ahead like that (indicating); there was no machine, diagonally across, looking to my right; I don't remember ever getting over that road; I don't remember any impact of any machine or anything. When I came to at the hospital I didn't know what had happened to me. They told me I had an automobile accident. I said where and how. I didn't know I was in the hospital; I knew nothing." He also testified that he did not see the machine at the time of the accident, nor hear any horn blown or any warning given by the automobile that hit him.

The witness Hayes, who walked with the plaintiff up the path across the lawn towards the station and crossed the driveway in front of the station, testified in part as follows: That as they approached the driveway he looked very carefully down the road to the intersection of Juniata Street and saw no automobiles on the road, and then proceeded to cross the driveway. "Q. What happened, if anything? A. Well, as we got to the other side I stepped off the road and turned quickly and this car was going over Mr. Waltring; I could just see the front wheel falling off his body and the back wheel proceeding to go over. It slowed up and went over and as it went over it went on further down the road. Q. You were walking in front of him, but close enough to carry on a conversation? A. Exactly. Q. Had you or not seen the automobile before it struck him A. I never saw it. Q. Can you say about how long it took you to walk across

that driveway from where you say you looked when you stepped off the path until you saw Mr. Waltring under the machine? Can you state how long it took you and how wide that driveway is? A. Well, I should say the driveway would be 25 feet according to the plat and it took between five and six seconds to walk across"; that he heard no horn blown and he would have heard it, if it had been blown and that he did not see the automobile until after it had struck the plaintiff and was passing over his body.

The witness Cosgrove, a special officer of the Pennsylvania Railroad, who was at the station and saw the accident, testified in part: "As I was standing there I saw these machines coming from this course here up the road and turn into the driveway to the station, and under my range of view there were three machines coming up here and one shot out from the back of the other two and came up here (indicating) and struck this man and knocked him about six feet from the machine and fell opposite from the machine on the left side and the machine struck him on this side (indicating), the left front wheel and rolled him down on his face, and he laid there with both hands out that way (indicating), and the blood gushing from his face, and I ran after the machine right here and six or seven men jumped out, and when I got up to the machine the man who was operating the machine was all nervous and Mr. Baldwin who was at the station said, I will take care of this." "Q. How far down the driveway from where he was struck, if you know, was it when this machine came around the other two? A. Well, it happened so quickly, it looked like he shot out on the top of the man, that was when he was going on the left side of the driveway, when he was about twenty feet from the station. The machine was going very fast, and went about 100 feet after it struck him before it stopped; that he did not hear any horn blown and he was in a position and close enough to have heard it, if it had been blown."

The witness Carey, who was standing on the platform, the elevated southbound track of the railroad station, at Havre de Grace, and who saw the accident, testified: There was a line of machines coming up this driveway. I don't know how many and this fellow pulled out from the line and came in on the left side, hitting the gentleman Waltring, knocking him down and passed over him; the left side of the car, both wheels. There was no signal of any kind given before the accident. The plaintiff was near the left side of the driveway and coming across, when he was hit; that the automobile was going at what he would call a rapid rate of speed, and there were no obstructions to prevent him from seeing the entire accident.

The witnesses, Stewart and Connelly, who saw the accident and saw the machine hit the plaintiff, testified that the machine was running very fast with the crowd coming up the driveway and that, when the machine went over the body it was going at an excessive rate of speed.

There were three witnesses examined on the part of the defendant. The witness Andrew Forsythe stated that he saw the accident and was about four feet from it. He testified as follows: "Q. Tell exactly what you saw? A. I was standing alongside of the road, and the man walked out about three steps in the road, and he got hit by the right fender of the car, and there was another crowd of people standing alongside of the road, and that was all I could see and the people gathered around him and I went on and sold my papers. Q. Now, was the machine which struck him, how was that traveling, fast? A. It was not traveling fast. Q. After it struck the man, what happened to the machine? A. It stopped about 25 feet away. Q. It stopped, which side of the road did it stop on? A. The right-hand side. Q. The right-hand side facing the station? A. Yes, sir. Q. Now, this man, you say, took about three steps, were those steps across the road or diagonally across the road? A. Diagonally. Q. Which side of the road was he on when he

was struck, the left or right side? A. The right-hand side. Q. Was there anything to prevent the man who was struck from seeing that automobile coming, if he had looked? A. No, sir."

He testified upon cross-examination that the car was not running fast, and that the horn was blown, before the accident, and when the car was about a car and a half length from the place of the accident.

Thomas E. McLane, the chauffeur, who was running the car at the time of the accident, testified that he had been in the defendant's employ for about two and one-half years before the accident, and the accident happened while he was driving the car to the station from the race track with a load of six passengers; that he was driving between eight or nine miles an hour, and could not, by reason of the condition of the road, have been driving any faster, that the horn was blown all the way up the driveway to warn the people crossing the field and in the road, that he did not pass any other machine going up to the station, and did not see the plaintiff until he stepped in front of the machine, and that he made an effort to stop the car before it struck him, but could not do it.

There was other testimony on the part of the plaintiff and the defendant, but it would serve no useful purpose to detail more of it here. What we have recited is sufficient to show there was error in granting the defendant's second prayer, which instructed the jury that it appeared from the uncontradicted evidence that the plaintiff was guilty of contributory negligence and the verdict must be for the defendant.

The law of contributory negligence in this State is well settled, and the cases hold, that unless the act and conduct of the plaintiff relied on as amounting in law to contributory negligence is established by clear and uncontradicted evidence, the case should not be withdrawn from the jury, and that when the nature of the act relied on to show contributory negligence can only be determined by all the circum-

stances attending the transaction it is within the province of the jury to characterize it.

In *Winkelman & Brown Co.* v. *Colladay*, 88 Md. 91, this Court said, it is well settled that unless there is some prominent and decisive act, in regard to the effect and character of which no room is left for ordinary minds to differ, courts will not withdraw cases of this character from the consideration of the jury. *Central Ry. Co.* v. *Coleman*, 80 Md. 337; *Consolidated Ry. Co.* v. *Rifcowitz*, 89 Md. 340; *Mayor & C. C. of Balto.* v. *Mattern*, 133 Md. 16.

In the case at bar there was a conflict of evidence in the material facts relied upon as constituting contributory negligence, and it was for the jury to say under all the facts and circumstances attending the accident whether the plaintiff was guilty of contributory negligence, and not a question for the Court to determine as a matter of law. *McCarthy* v. *Clarke*, 115 Md. 464; *Burke* v. *Mayor & C. C. of Balto.*, 127 Md. 561; *Biggs* v. *Mayor & C. C. of Balto.*, 129 Md. 690; *Strauss* v. *United Ryws.*, 101 Md. 499.

There was also error in the ruling of the Court in granting the defendant's special exception to the plaintiff's first prayer. This exception was based upon the theory that there was no evidence in the case legally sufficient to support the hypothesis of the prayer, that the injury referred to resulted directly from the want of ordinary care and prudence on the part of the driver of the defendant's automobile.

The question of negligence *vel non* on the part of the defendant was one properly for the jury and the plaintiff was entitled, under the facts of the case, to have the whole evidence passed upon by the jury.

The acts and conduct of the defendant's chauffeur, relied upon by the plaintiff to constitute negligence on the part of the defendant, as stated by the appellant in his brief, were: First, that the chauffeur in charge of the defendant's automobile was operating it at the time of the accident at a highly excessive and unlawful rate of speed; second, that he failed

to blow his horn or give any warning or signal of his approach; and third, that he shot out from behind another automobile and passed it at a high rate of speed on a public street or driveway across which the plaintiff and many other persons were then walking to take the trains at the railroad station.

It cannot be held, under the facts and circumstances disclosed by the record in this case, that there was no evidence legally sufficient to require the case to be submitted to a jury and the Court, for the reasons stated, was not warranted in sustaining the defendant's special exception to the plaintiff's first prayer.

In *Cooke* v. *Traction Co.,* 80 Md. 558, it is said, where the nature and attributes of the act relied upon to show negligence contributing to the injury can only be correctly determined by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it and it is not for the Court to determine its quality, as matter of law.

The first, second, third, fourth, fifth and seventh exceptions were reserved to the ruling of the Court in refusing to permit certain witnesses to testify as to the rate of speed the car was going at the time it came up the driveway, and at the time it struck and passed over the body of the plaintiff.

These witnesses were clearly competent to testify to the speed of the car. They had witnessed the accident and it was error to have sustained the objections and to have excluded their testimony. *United Rwys. Co.* v. *Ward,* 113 Md. 664; *Taxicab Co.* v. *Emanuel,* 125 Md. 259; *United Rwys. Co.* v. *Mantik,* 127 Md. 205; *Biggs* v. *Mayor & C. C. of Balto.,* 129 Md. 687.

There was no error in the ruling upon the sixth exception. The witness was on the platform of the station on the level of the driveway and was competent to testify on which side of the station the cars were stopping. The eighth and ninth exceptions were taken to the refusal of the Court to permit

the plaintiff on re-direct examination to state the amount of salary he had received as manager of the New Orleans race track in 1915 and 1916 or what compensation he had received as assistant manager at the Tampa race track in 1910. He testified that these were only temporary employments and as such, we do not think they formed a proper basis for estimating his earning capacity. *Md., Del. & Va. R. Co.* v. *Brown,* 109 Md. 315.

The tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth exceptions were not pressed in argument and are not discussed in the appellant's brief. We have examined them and find no reversible error in these rulings.

For the errors indicated, the judgment will be reversed and a new trial will be awarded.

> *Judgment reversed, with costs, and case re-manded for a new trial.*