MARY A. FUREY *vs.* WORCESTER AND SOUTHBRIDGE STREET RAILWAY COMPANY.

Worcester.    October 4, 1909. — October 21, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Street Railway.

At the trial of an action against a street railway company by a woman, who alleged that, as she was rightfully upon a walk near the defendant's track, an open electric street car passed her from in front so rapidly that her skirt was caused, by the draft of air created, to be caught on something on the car and she was thrown down and dragged some distance, the evidence as to the speed of the car was as follows: The plaintiff testified that it was "coming quite fast," but that she "could not judge how fast"; one of two companions with the plaintiff testified that he "knew it was going mighty fast," because he knew it "was rocking considerably," and because he noticed a draft of wind as the car went by him, and that the car went by about one hundred and twenty-five feet before it stopped; another companion of the plaintiff testified that the car "was going very fast"; a passenger upon the car testified that the car "was going rather fast because my sister felt cold and she lifted her skirt and put it over her shoulders," but that she did not know the rate of speed. *Held,* that the evidence did not warrant a finding that the car was moving at an unusual rate of speed.

At the trial of an action against a street railway company by a woman, who alleged that, as she was rightfully upon a walk near the defendant's track, an open electric street car passed her from in front so rapidly that her skirt was caused, by the draft of air created, to be caught on something on the car and she was thrown down and dragged some distance, if it appears that, just previous to meeting the car, the plaintiff and two companions had been walking three abreast, that, seeing the car approaching, they separated and walked in single file because the distance between the fence on one side and the place where the running board of the car would be on the other was only about three feet, that the motorman saw their action but did not slacken the speed of the car, which was not shown to have been running at an unusual rate of speed, but that the draft caused by the passing of the car so near the plaintiff did cause her skirt to be caught by the car as alleged, there is no evidence of negligence on the part of the defendant, since the motorman, in view of all the circumstances, had no reason to apprehend that his running of the car as he did would endanger the plaintiff.

TORT for personal injuries alleged to have been received by the plaintiff because, as an open electric street car of the defendant was passing her, under the circumstances stated in the opinion, the draft of air thus created caused her dress skirt to be caught upon something on the car and she was thrown down and

dragged.    Writ in the Superior Court dated September 10, 1907.

The case was tried before *Gaskill,* J.    The evidence as to the speed of the car was as follows:

The plaintiff on direct examination stated, "The car was coming quite fast.  I could not judge how fast it was going.  I could not really say."  On cross-examination she testified, "I noticed about the speed, going quite fast."

Ella Jacovia, who was a passenger upon the car, testified "We thought it was going rather fast because my sister felt cold and she lifted her skirt and put it over her shoulders."  Q. "But, of course, you do not know the rate of speed?"  A. "No.  I do not."

Thomas L. Troy, who was one of the plaintiff's companions, testified on the subject in direct examination as follows: Q. "What did you notice about the car as it came down?"  A. "I know it was going mighty fast." — Q. "What made you think that?"  A. "Well, I knew this car was supposed to meet a train of cars at Saundersdale." — Q. "What made you think it was going fast?"  A. "I knew the car was rocking considerably coming toward me." ... — Q. "Did the car continue to go fast as it passed you?"  A. "It kept going fast as it went by me." — Q. "As it passed by you what did you notice about the speed of the car?"  A. "I noticed it must be going mighty fast by the way it went by me." — Q. "Did you say you noticed some wind?"  A. "Sure." — Q. "What did you notice?"  A. "The draft as the car was going by me." — Q. "Where did the draft come from?"  A. "It must have come from the car. ... I am not an expert and do not know much about the rate of speed of steam cars and electric cars. ... We were coming toward the electric car when it passed. ... The first thing I noticed after the electric car passed me was when I turned around I saw Miss Furey laying up against the side of the fence — the rail fence. ... The car went down and came back again.  I should think the car went about one hundred and twenty-five feet before it stopped."

John F. Troy, fifteen years of age, the other companion of the plaintiff, testified in direct examination as to the speed of the car as follows: "It was going very fast when I saw it.  It did

not stop or slacken its speed as it passed us. . . . She [the plaintiff] was dragged a few yards and then thrown up against the side of the fence."

Other facts are stated in the opinion.

At the close of the evidence of the plaintiff, the presiding judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*D. I. Walsh,* (*J. F. McGrath* with him,) for the plaintiff.

*C. C. Milton,* for the defendant.

HAMMOND, J.   It is unnecessary to pass upon the question of the care of the plaintiff, for we are of opinion that there was no evidence of negligence on the part of the defendant.   At the time of the accident the plaintiff was upon the earth sidewalk, about half way between the end of the iron fence and the driveway leading to the works of the American Optical Company. At that point the sidewalk appears to have been at least five feet wide, that is, the distance between the wooden fence upon one side of the plaintiff and the nearest rail of the defendant's track on the other side was at least five feet.   The extreme projection of the running board of the defendant's car over the rail was one half of an inch less than two feet.   The space between the fence and the nearest part of the car was therefore at least three feet, and probably was two or three inches more than that.   In the direction in which the plaintiff was going the sidewalk gradually became more narrow, until the space between the running board and the fence was a fraction of an inch short of thirty inches.   The plaintiff upon two previous occasions had walked over this sidewalk at this place, but upon neither of those occasions had she met any car.

Just before seeing the car in question the plaintiff and her two companions had been walking on this sidewalk, " three abreast," but upon seeing the car approaching they separated and walked in single file, the plaintiff being the second in the line and about five feet behind the leader.   If the motorman saw them as soon as they saw him, it is a fair inference that he saw the change in their manner of walking.   There is nothing to show that the motorman, as his car gradually approached these pedestrians, did not look at the situation.   A look would have disclosed to him that they were upon this walk, and he

had the right under the circumstances to assume (what was the fact) that they saw the car coming and were preparing to be out of its way when it should reach them. They did not intend to take the car. By their actions they plainly showed that they knew the car was coming, that they did not desire to board it, and that they knew that in passing them it would come quite near. There was room enough to pass without striking the plaintiff, and in fact the car did not strike the plaintiff or either of her companions. The only claim of the plaintiff is that by reason of the current of air caused by the movement of the car her dress was blown towards the car and in some way caught by it, so that she was dragged along with the car; and that the current of air was due to the unreasonable rate of speed of the car. That the dress was moved by the current of air, and that this current was caused by the moving of the car may well be inferred from the evidence, but it by no means follows that the car was moving unreasonably fast. Such a movement of air is a matter of common knowledge, and the motorman might properly assume that the plaintiff would know of it.

After a careful scrutiny of the evidence we are of opinion that it fails to show an unusual rate of speed. The motorman, in view of all the circumstances, had no reason to apprehend that the car would endanger the plaintiff. We see no negligence on the part of the defendant.

*Exceptions overruled.*