## LEITNER v. COLUMBIA RWY., GAS & ELECTRIC CO. *ET AL.*

### (143 S. E., 273)

1. TRIAL—COURT MUST CONSIDER ALL PERTINENT TESTIMONY IN CONSIDERING WHETHER PROOF MAKES ISSUE OF FACT.—Court, in determining sufficiency of proof of facts to make issue for jury, may not consider only portions of testimony and disregard other portions equally as pertinent, but in effect contradictory.

2. TRIAL—ON DEFENDANT'S MOTION FOR DIRECTED VERDICT, EVIDENCE AND INFERENCES THEREFROM MUST BE CONSIDERED MOST FAVORABLY TO PLAINTIFF.—In passing on defendant's motion for directed verdict, trial Judge must consider evidence together with all inferences which jury could justifiedly draw therefrom in light most favorable to plaintiff, and must submit case to jury, where more than one inference can be drawn.

3. STREET RAILROADS—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE HELD FOR JURY, IN ACTION FOR INJURIES BY PEDESTRIAN STRUCK WHILE CROSSING CAR TRACK.—In action for injuries to one struck while crossing street car tracks on foot between sundown and dark, at place where view of approaching car was claimed to have been obscured, issue of plaintiff's contributory negligence and of negligence of street railway company on account of operation of car at excessive speed *held* questions for jury.

4. STREET RAILROADS—ISSUE WHETHER PEDESTRIAN CROSSING CAR TRACK WAS TRESPASSER HELD FOR JURY UNDER EVIDENCE THAT HE USED TRAVELED PATH.—In action against street railway company for injuries sustained in collision when plaintiff attempted to cross tracks on foot, issue whether plaintiff was a trespasser, to whom company owed no duty except not to injure him willfully, *held* for jury under conflicting evidence as to public's use of alleged path across track.

5. STREET RAILROADS—REFUSAL TO EXCLUDE WILLFULNESS FROM JURY AFTER INJURED PLAINTIFF'S WITHDRAWAL OF DEMAND FOR PUNITIVE DAMAGES HELD NOT ERROR UNDER EVIDENCE, WHERE ISSUE OF CONTRIBUTORY NEGLIGENCE REMAINED.—In action against street railway company for injuries to pedestrian crossing track, in which defendant asserted plaintiff's contributory negligence, refusal of Court to exclude issue of willfulness from jury after plaintiff had withdrawn demand for punitive damages *held* not error, in view of evidence of car's excessive speed.

6. APPEAL AND ERROR—ADMISSION OF RULE OF STREET RAILWAY COMPANY REQUIRING CARE IN PASSING VEHICLES HELD NOT PREJUDI-

CIAL, IN ACTION FOR INJURIES BY ONE REPAIRING PARKED AUTOMO-
BILE, STRUCK WHILE CROSSING TRACK ON FOOT.—Admission in evi-
dence of rule of defendant street railway company requiring mo-
tormen to exercise great care when passing a vehicle alongside of
the track, if error, *held* not prejudicial, in action against street car
company by one engaged in repairing automobile parked close to
the car track, who was strcuk in attempting to walk across track.

Before DENNIS, J., Richland, October, 1926.  Affirmed.

Action by C. H. Leitner against the Columbia Railway,
Gas & Electric Company and another.  Judgment for plain-
tiff, and defendants appeal.

*Messrs. Elliott & McLain,* and *Herbert & Dial,* for ap-
pellants, cite: *Duty imposed on one crossing railroad track:*
94 S. C., 143; 121 S. C., 394; 179 Fed., 577; 29 L. R. A.
(N. S.), 924; 24 L. Ed., 543; 174 U. S., 379; 171 Fed.,
319; 181 Fed., 799; 270 Fed., 132; 76 S. W., 706. *Same
rule applies to street railways operating over right of way
in country:* 187 Pac., 50; L. R. A., 1916-E, 58; 115 Pac.,
320; 138 Pac., 1005; 51 Atl., 421. *As to admissibility in
evidence of rules of company:* 85 S. C., 455. *Willfulness
should have been withdrawn from jury here:* 79 S. C., 209;
74 S. C., 64; 73 S. C., 520; 72 S. C., 260; 111 S. C., 499.

*Messrs. Frank G. Tompkins, Salley & Salley,* and *Adam
H. Moss,* for respondent, cite: *On a motion for a directed
verdict, evidence considered most favorable to adverse
party:* 135 S. C., 155; 132 S. E., 47; 125 S. C., 303; 124
S. C., 326; 89 S. C., 143; 109 S. C., 290. *Sufficiency of tes-
timony determined only by jury:* 106 S. C., 123; 93 S. C.,
22; 103 S. C., 326. *Question of negligence and contributory
negligence for jury here:* 95 S. C., 253; 90 S. C., 331; 129
S. C., 391; 122 S. C., 93; 129 S. C., 428; 65 S. C., 218;
121 S. C., 404; 117 S. C., 516; 136 S. E., 639. *Duty owed
by railroad to trespasser:* 57 S. C., 243; 90 S. C., 266; 104
S. C., 114; 136 S. C., 377. *Implied license by railroad to
use of right of way by pedestrians calls for use of ordinary
care:* 67 S. C., 508; 70 S. C., 183; 61 S. C., 560. *Question*

*as to licensee for jury:* 61 S. C., 560; 90 S. C., 337; 67 S. C., 499; 75 S. C., 292. *Sufficient evidence to establish a traveled way:* 138 S. E., 803; 97 S. C., 423; 34 S. C., 299; Id., 450; 41 S. C., 20; 47 S. C., 375; 59 S. C., 429; 63 S. C., 494; 125 S. C., 289. *Common law duty of motorman to give warning of approaching car:* 126 S. C., 447; 61 S. C., 556; 125 S. C., 478; 25 R. C. L., 1213. *Proper to submit issues of recklessness and willfulness to jury to offset defense of contributory negligence:* 96 S. C., 267; 94 S. C., 462; 103 S. C., 326; 75 S. C., 292. *Sufficiency of evidence:* 72 S. C., 389; 140 S. C., 4; 121 S. C., 394; 84 U. S., 657; 120 S. C., 7; 124 S. C., 314; 138 S. E., 690. *Admission of rule of company proper:* 62 S. C., 330; 94 S. C., 403; 109 S. C., 34; 85 S. C., 459. *Question of irrelevancy, materiality and competency of evidence discretionary with trial Judge:* 42 S. C., 306; 104 S. C., 16; 121 S. C., 426; 122 S. C., 484. *"Willfulness, wantonness and recklessness":* 137 S. C., 359; 82 S. C., 326; 97 S. C., 66; 70 S. C., 183; 122 S. C., 93; 90 S. C., 331; 92 S. C., 171; 67 S. C., 347; 72 S. C., 350; 75 S. C., 116; 91 S. C., 477; 111 S. C., 322. *May not complain of admission of irrelevant and incompetent evidence unless shown to be prejudicial to rights:* 92 S. C., 354; 98 S. C., 289; 87 S. C., 18; 91 S. C., 417. *Where demand for verdict based on willfulness is withdrawn, willfulness is still in the case to defeat contributory negligence:* 105 S. C., 485; 96 S. C., 276; 94 S. C., 462. *Contributory negligence is no defense to willfulness and wantonness:* 120 S. C., 370; 127 S. C., 505; 86 S. E., 952; 73 S. C., 467; 82 S. C., 321; 91 S. C., 523; Id., 546; 99 S. C., 284. *Cases distinguished:* 94 S. C., 143.

May 15, 1928.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

I regret that I find myself in disagreement with the opinion of Mr. Justice Cothran that the judgment in this

case should be reversed; to the contrary, for the reasons which follow, I think the judgment should be affirmed.

This is an action for damages for personal injuries alleged to have been received by the plaintiff on December 20, 1924. On the afternoon of that date, the automobile in which the plaintiff was riding on his way to the City of Columbia broke down near a point known as the Seaboard crossing on the road leading from Hyatt Park into the city. He secured help, and was engaged several hours in repairing the automobile, which was parked close to the street car track. After the work was finished, finding it necessary to get a bucket of water for the radiator of the car, he started to a nearby branch or spring, and in crossing, or attempting to cross, the street railway track, was struck by a street car, and seriously injured. He alleged that the injuries thus received resulted from the negligent and willful acts of the defendant street railway company, in the following particulars:

"(a) In failing to ring any gong or to give any warning whatsoever to the plaintiff that a street car was approaching, in time for him to avoid it.

"(b) In running the said street car at such a high, reckless, and unlawful rate of speed as to endanger the life, limb, and property of the plaintiff and users of the said public road at the point in question.

"(c) In failing to keep a proper lookout, when by so doing plaintiff could have been seen, and the street car could have been stopped, and signals given, in time to have avoided the accident.

"(d) In violating its own rules and failing to bring the street car down to a slow rate of speed and to stop at the point in question, in accordance with signs maintained thereat.

"(e) In that, knowing that the said track was on a down grade at the place in question, and that the street car line

was very close to the road in question and crossing the traveled way in question, the defendant, Columbia Railway, Gas & Electric Company, failed to take extra precautions by running the street car slowly, keeping an extra lookout to prevent the possibility of injuring the plaintiff or others at the point in question.

"(f) In that, knowing that the plaintiff and others were working on the car in question, closely adjacent to the track here in question, the defendant, Columbia Railway, Gas & Electric Company, its agents and servants, failed and refused to bring the street car under control and to keep an extra lookout in order to prevent an accident at that point."

The answer set up contributory negligence, and pleaded that the plaintiff was a trespasser upon the street car tracks at the time of the injury. During the trial of the case, the plaintiff withdrew his claim for punitive damages, and the Court instructed the jury that, if they found for the plaintiff, they should find actual damages only. The defendants' motion for a directed verdict, based upon several grounds, was overruled by the Court. The jury found for the plaintiff in the sum of $20,000.00. From judgment entered on the verdict, the defendants appeal.

Of appellants' assignments of error, Mr. Justice Cothran considers only two: (1) The refusal of the defendants' motion for a directed verdict on the ground that the plaintiff's contributory negligence was the proximate cause of his injuries; and (2) error in admitting, over objection, defendants' Rule 280 applicable to the operation of street cars.

As to the first proposition, which is discussed as "a major reliance of the defendants for reversal," the learned Justice asserts:

"No other reasonable inference can be drawn from the evidence than that the plaintiff was guilty of such contributory negligence as to bar his recovery of damages."

And in support of this assertion, he directs attention, in the following language, to certain testimony of several of plaintiff's witnesses:

"Harry Anderson, the plaintiff's first witness, testified that he was standing on the front platform, by the side of the motorman; that there was absolutely nothing to keep the plaintiff from seeing the street car at least 300 or 400 feet before it got to him.

"Mrs. Johnson testified that she was sitting near the front of the car looking out of the front window; that it looked to her as if just as the plaintiff stepped on the track the car hit him.

"C. H. Leitner, Jr., testified that the plaintiff started to cross the track diagonally, facing slightly up the hill, in the direction from which the car was coming; that all that the plaintiff would have had to do to see the car coming was *to glance up;* that the track was straight for more than a block; that he saw the car coming, and tried to pull his father back.

"Dr. Williams testified that he was driving a block away, going into Columbia, looking in the same direction that the plaintiff should have looked, and could plainly see the car after it had stopped."

It is not a correct test of a fact sought to be proved, to consider only certain portions of the testimony pertinent to such fact or issue and to disregard other portions equally as pertinent, but in effect contradictory. An examination of the record in this case discloses that there was a mass of conflicting testimony on the question of contributory negligence as well as on other material questions.

For instance, turning to the testimony of the witnesses named in the opinion of Mr. Justice Cothran, we find that the witness, Anderson, on cross-examination, did testify that there was nothing to keep the plaintiff from seeing the

street car, and that he could have seen it 300 or 400 feet before it reached him. There was, however, testimony of other witnesses tending to show that it was growing dark, that there were no lights on the street car, and that the view of the approaching car from the point where the plaintiff was injured was "camouflaged" by the contour of the land, trees, buildings, and billboards and the color of the street car, all of which might interfere with or prevent the plaintiff's seeing the car upon its approach. Anderson did not testify that he stood where the plaintiff was injured and looked in the direction from which the street car approached to test the truth or accuracy of his statement that the plaintiff could have seen the car. His testimony showed that he was standing on the front platform with the motorman, looking in the direction of the place where the plaintiff was injured. Hence, when all the testimony in the case is properly considered, his statement is seen to be nothing more than an expression of opinion, and whether such opinion was of any factual value was a question for the jury. In addition, he testified that the car was some 40 or 50 feet away when the plaintiff picked up the bucket and started across the track; that witness's hearing was good, and, if the gong was sounded he did not hear it.

Mrs. Johnson testified that at the time of the accident she was "middle ways of the car on the right-hand side"; that the car was going down hill at a very fast rate of speed; that "all of us ladies talked about how fast it was going— we all hold our breath going down that hill"; and that she did not hear any gong or bell ring. It does not appear from her testimony that she knew anything about the plaintiff's position or how the accident occurred, except that for a moment she saw his face, and it looked to her as if the man had stepped out on the track. She was certain, however, as to the street car's rapid rate of speed.

It is true that C. H. Leitner, Jr., testified, on cross-examination, that all the plaintiff had to do was to glance up, and

he could have seen the street car coming, but immediately afterwards, apparently on a better understanding of the question, he changed or materially modified his statement. I quote in full his testimony on that point:

"Q. Then he (the plaintiff) was a little more facing the direction of the street car than if he had gone straight across? A. His body was, but his face was not—well in that position, he was turned that way (indicating)—all he would have had to do would be to glance up, and he could have seen the street car coming? A. Yes, sir.

"Q. Practically straight for more than a block up there —that's correct, isn't it? A. It is straight for some distance. I don't know how far.

"Q. If he had looked, he could have seen the street car coming? A. He would have had to look, sir.

"Q. He would have had to raise his head and look, and he could have seen the street car coming? A. You mean if he could have just glanced that way—he could have seen it?

"Q. Yes, sir. A. No, sir.

"Q. What was there to obstruct his view? A. It was camouflaged.

"Q. You mean the street car—camouflaged like the battleships were? A. No, sir; I don't mean that, but the billboards were painted up, and the street car was painted up, and it was just before dark and no lights, and the whole thing was camouflaged."

This witness also testified that he first saw the street car when it was about four to six feet away, and after the mechanic "hollered"; and that, just beyond where the accident occurred, there was a "stop" sign, but that after the accident it was moved away, and a "run slow" sign was put in its place.

Dr. C. F. Williams testified that, as he was going to Columbia on the afternoon in question, he saw an "accumulation" of several automobiles and a street car standing

where the accident occurred, and that the "confusion" suggested to his mind that there had been an accident, and he stopped, thinking he might be able to help in an emergency. Dr. Williams did not see the accident, and it is apparent that what attracted his attention was the "accumulation" at that point. He did not testify that from the plaintiff's point of view he could have seen a street car at that time approaching down the track at the distance of a block.

As to the plaintiff himself, the opinion says:

"He was familiar with the situation; had been working within six feet of the car track for nearly five hours; had seen car after car pass up and down; as he himself testified there had been 'quite a few' passing. From where he was at the front of the automobile, he had a perfectly clear view of the track, up the hill, for *600 feet,* and all that he had to do to discover whether a car was approaching would have been to turn his head and use his eyes. He does not claim to have done so; and, even if he had so claimed, his statement could not be accepted as evidence, in view of the absolute physical fact that, if he had looked, he would have seen."

The plaintiff testified, among other things, that they worked on the car until "about sundown—about dark"; that he picked up a bucket to cross the track; and that it would take about two steps to get to the curb and about two more steps to get up on the rail; *that " I know I looked up that track";* and that there were trees and buildings and signboards along there which would obstruct the view of the street car, and it would have to make some extra noise to attract one's attention. It is a significant fact also that the plaintiff's son, who was standing close by the track, and almost in reach of his father, did not, according to his testimony, see or hear the street car until it was practically upon the plaintiff. The plaintiff also testified that a number of street cars passed along there during the afternoon, and that one of them had stopped; that, generally speaking, they

took notice of him, and came by there carefully, and that his attention was attracted to some of them by the ringing of the gong. I think it is perfectly clear from his testimony, if believed, that the plaintiff did look up the car track, and that, at the time and place, his view of the car was interfered with or obstructed for the reasons stated by him and his son in their testimony.

The appellants' motion for a directed verdict was urged also on the additional ground that there was no evidence of actionable negligence on the part of the defendants. We have necessarily referred to evidence bearing upon this question in our discussion of the question of contributory negligence. There was testimony tending to show that, although the time was between sundown and dark, and although the view at the time and place of the accident was "camouflaged" by the color of the car, the contour of the land, trees, buildings, and billboards, the car approached without lights the place where the plaintiff was struck; that it was running at a fast and reckless rate of speed, and the motorman was unable to stop it even by the use of the emergency brakes within about 60 feet of the point where the brakes were applied; and that no warning of the car's approach was given, although the motorman could have seen the plaintiff 75 or 100 feet before reaching him. This and other testimony tended to show that the street railway company was negligent; there was also positive evidence tending to show the contrary.

In the opinion it is stated:

"The fact conceded by the plaintiff's witnesses that the car was brought to a standstill within eight feet from where the plaintiff lay is significant both as to the normal speed of the car and of the prompt effort of the motorman to stop after the plaintiff's peril had been disclosed."

The motorman testified that he was running from "12 to 15" miles an hour; that the first intimation he had that the plaintiff was going on the track was when he saw him walk-

ing from behind the automobile, and that at that time he was about 15 or 20 feet from him; that he then put on the emergency brakes—which locked the wheels; that the car was about 30 feet long, and that, after he applied the brakes, he went a distance of 15 or 20 feet, plus the length of the car, and an additional 8 or 10 feet before he stopped.   I quote some of his testimony:

"Q. Well, you must have been right at him when you saw him?   A. I was right close to him.

"Q. When you put that brake on, you must have been right where you struck him?   A. No, sir.

"Q. Well, didn't you tell Mr. Herbert just now that the back end of your car stopped 8 or 10 feet after passing where the man was struck?   A. Yes, sir.

"Q. So the car ran its own length and 8 or 10 feet after you struck him?   A. Yes, sir.

"Q. Well, you say you only dragged your wheels that distance, so you only put those brakes on just as you struck him, didn't you?   A. No, sir; before I struck him.

"Q. Well, if you put them on before you struck him, you dragged your wheels 20 feet before you got to him—why didn't you stop the car in that distance?   A. Possibly the heavy load I had on caused that.

"Q. And you drug them the whole length of the car, and 10 feet after that?   A. Yes, sir.

"Q. And you say that car is how long?   A. Well, I didn't say how long.

"Q. Well, tell us how long it is?   A. Well, possibly 30 feet.

"Q. Possibly 30 feet?   A. Possibly—it might not be that long.

"Q. Well, if it is 30 feet, and your car ran 10 and 20, is 60 feet, after you locked the wheels—is that about right?   A. Yes, sir."

He also testified that "possibly running 15 miles an hour on the level it (the street car) wouldn't run (after the brakes

were locked) over 15 feet—something like that." I think that the foregoing testimony of defendants' witness is very significant as showing the rapid rate of speed, testified to by other witnesses, at which the car was being driven at the time of the accident, and that the brakes were not applied, if then, until the car was practically upon the plaintiff.

In passing upon a motion for a directed verdict for a defendant, the trial Judge is bound by the well-established rule of law that the evidence, together with all inferences which the jury can justifiedly draw therefrom, must be considered most favorably to the plaintiff in determining whether the motion shall be granted, and that, where more than one inference can be drawn from the testimony, the case must be submitted to the jury.

In *Templeton v. Railway Co.,* 117 S. C., 44; 108 S. E., 363, the Court said (quoting syllabus) :

"On motion to direct verdict for defendant only the facts fairly inferable from plaintiff's evidence without regard to conflict raised by defendant's evidence, is [are] to be considered."

In *Ashe v. Railway Co.,* 104 S. C., 414; 89 S. E., 482, we find (quoting syllabus) :

"On defendant's motions for a nonsuit and for a directed verdict, where plaintiff has made two different statements that which is most favorable to him must be considered."

In *Lower Main Street Bank v. Caledonian Insurance Co.,* 135 S. C., 155; 133 S. E., 553, the Court thus states the rule :

"The well-established rule in this State is that if there is any testimony whatever to go to the jury on an issue involved in a cause, or even if more than one inference can be drawn from the testimony, then it is the duty of the Judge to submit the cause to the jury. This is true, even if witnesses for the plaintiff contradict each other, or if a witness himself in his testimony makes conflicting statements. The credibility of witnesses is entirely for the jury. On a mo-

tion for a directed verdict, the evidence in the cause must be considered most favorably to the plaintiff. *Anderson v. Hampton & Branchville Railroad & Lumber Co.* [134 S. C., 185], 132 S. E., 47. *Crews v. Sweet,* 125 S. C., 306; 118 S. E., 613; 29 A. L. R., 43. *Richardson v. N. W. Railroad Co.,* 124 S. C., 326; 117 S. E., 510. *State v. Parris,* 89 S. C., 143; 71 S. E., 808."

In the *Crews case, supra,* we find:

"When a motion is made by a defendant for a directed verdict, evidence in the cause must be considered most favorably to plaintiff in determining whether a directed verdict should be granted."

See, also, *Kell v. Fertilizer Co.,* 123 S. C., 199; 116 S. E., 97.

In the case of *Williams v. Railway Co.,* 103 S. C., 321; 88 S. E., 131, the Court said:

"There was testimony tending to prove negligence on the part of the defendant, and likewise that the deceased was guilty of contributory negligence, from which testimony the jury might reasonably have drawn more than one inference as to the proximate cause of the injury. These issues were therefore properly submitted to the jury."

So under the conflicting evidence adduced in the present case, the trial Court could not say, as a matter of law, whether plaintiff's injuries were due to actionable negligence on the part of the defendants, nor whether the plaintiff was guilty of such contributory negligence as would bar his recovery: those questions were for the jury.

The defendants also moved for a directed verdict on the ground that the testimony showed that the plaintiff was a trespasser on the street car tracks, and that the company owed him no duty except not to injure him willfully, and make the refusal of the Court to grant the motion on this ground the basis of an assignment of error. There was positive testimony tending to show that the place where the plaintiff attempted to cross the car track was a traveled

way or path, which had been used by the public for more than 20 years with the acquiescence of the street car company—and there was testimony equally as positive to the contrary. The issue made was one of fact, which it was not the prerogative of the Court to decide.

The appellants impute error to the trial Judge in refusing their request to exclude the issue of willfulness from the jury after the respondent had withdrawn his demand for punitive damages.

In *Huggins v. Railway Co.,* 96 S. C., 267; 79 S. E., 406, the Court declares:

"We see no reason why a plaintiff should not be allowed to prove that a tort was recklessly, willfully, wantonly or maliciously inflicted merely for the purpose of defeating the defense of contributory negligence."

In *Comer v. Railway Co.,* 105 S. C., 480; 90 S. E., 188, it is said:

"Where the demand for a verdict based on willfulness is withdrawn, willfulness is still in the case to defeat contributory negligence."

The appellants insist, however, that no evidence was adduced in the case from which willfulness might be reasonably inferred. Without again reviewing the testimony, it is enough to say that there was some evidence tending to show willfulness and recklessness on the part of the appellants in the manner of the operation of the street car at the time and place of the accident. There was no error as complained of.

Mr. Justice Cothran, in his consideration of the appellants' fifth exception, concludes that the trial Judge committed reversible error in admitting in evidence, over defendants' objection, Rule 280 of the defendant street railway company. This rule is as follows:

"Motormen must exercise great care when passing a vehicle along side of the track. They must ring the gong vigorously to attract the attention of the person driving as a

warning not to pull in ahead of car, and run cautiously until the vehicle is passed in safety."

The defendants' objection was based upon the ground that the rule was inapplicable under the facts shown.

A further discussion of the testimony is unnecessary. Even if it should be conceded that the rule was not strictly applicable, and that the Court erred in its admission, under the facts and circumstances of the case hereinbefore pointed out and discussed at some length it has not been made to appear that such error was prejudicial to the appellants.

On the whole, the case was tried in accord with the principles of law applicable. The issues made by the controversy were mainly issues of fact, which were properly submitted to the jury as determinable by them alone under the evidence; and to set aside the verdict and direct judgment for the defendants would be, in my opinion, a usurpation by this Court of the jury's prerogatives.

This opinion, written as a dissent from the opinion of Mr. Justice Cothran, being concurred in by the other justices, becomes the judgment of the Court, which is that all exceptions be overruled, and the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and CARTER concur.

MR. JUSTICE COTHRAN (dissenting): Action for damages on account of personal injuries alleged to have been sustained by the plaintiff in being struck by a car of the street railway system of the defendant, while he was attempting to cross the track on foot.

The complaint contains various specifications of negligence which will later be adverted to; the defendant denied all negligence, and pleaded contributory negligence of the plaintiff, and that he was a trespasser upon its track when injured.

The case was tried before his Honor Judge Dennis and a jury, the trial resulting in a verdict of $20,000 in favor of the plaintiff. The defendants appeal.

As a major reliance of the defendants for reversal is based upon the refusal of the Circuit Judge to direct a verdict in favor of the defendants, upon the ground of the plaintiff's contributory negligence, it is deemed proper to give a detailed statement of the circumstances attending the unfortunate occurrence.

The plaintiff, Leitner, lived in Fairfield County, and, on December 20, 1924, about noon left his home to go to Columbia, where he expected to meet his son, a Wofford College student, returning home for the holidays; he was traveling in his automobile, and had reached a point on the Camden Road, just outside of Columbia, when his car broke down, and had to be repaired. This was about 1 o'clock p. m. A garageman was sent for, and the repair work began and continued until just about the time of the accident, some time between 5:30 and 6 o'clock that afternoon.

The locus of the accident and the environment may be thus described:

Leaving the northern limits of the City of Columbia, the street car line extends through a suburb known as Eau Claire. Just beyond the city limits, the car line practically parallels the paved highway, from 1 to 6 feet away from it, for a distance of about 700 feet, descending a hill. The descent terminates at a stream called Smith's Branch. The point of the accident was about 600 feet from the top of the hill and 100 feet from the branch. On the left side of the highway, going from Columbia, its edge is a concrete shoulder or curbing, 6 or 8 inches high. About 6 feet from this curbing, and parallel with it, was the east rail of the car track. The disabled automobile had been pushed up the hill a little way, and was parked very close to the curbing, as the plaintiff testified, "a little angling," the right rear wheel "either against or very near it" (the curbing).

The plaintiff's son came up about the time the repairs were completed. The garage machinist was paid off. The plaintiff then picked up a bucket which was on the ground near the left front wheel of the automobile with the intention of crossing the street car track and following a path that led to a spring some distance away to get a bucket of water for the radiator. The plaintiff testified that the bucket was on the ground about 6 feet from the curbing, which was from 4 to 6 feet from the nearer rail of the track; that he took two steps from the bucket to the curbing, and about the same from the curbing to the rail. As he stepped up on the rail, his son, who was standing between the automobile and the curbing, on the right side, and the machinist, both discovered his peril, and yelled at him. The son made an effort to grab and pull his father back, but failed. Both of them saw the street car approaching and very near the plaintiff.

Some part of the front of the car, perhaps and most likely the corner of the vestibule, struck the plaintiff, and *knocked him back from the car* against the son and against the standing automobile. He sustained severe injuries about the head, shoulder and foot. One of his feet was so badly crushed as to necessitate amputation. It is impossible to explain, from the accounts of the plaintiff and his son, how the foot was crushed. One of the witnesses for the defendant testified that, while the plaintiff was down, the rear wheels of the street car ran over his foot. This is the only explanation that appears. It seems the only one reconcilable with the testimony of the plaintiff and his son, and with the fact that, when the car struck the plaintiff, it knocked him away from the car; otherwise the car would have run over his body.

While there is a reference in the complaint to the use, at the time of the injury, of a crossing over the track, by the plaintiff, the action must, in the absence of the allegations of facts referred to the signaling statute, be construed as an

action based upon negligence at common law, and, as the
verdict of the jury was for actual damages only, and the
plaintiff withdrew his claim for punitive damages, the alle-
gations of willfulness disappear.

The specifications of negligence alleged in the complaint
are as follows:

"(a) In failing to ring any gong or to give any warning
whatsoever to the plaintiff that a street car was approach-
ing, in time for him to avoid it.

(b) In running the said street car at such a high, reck-
less, and unlawful rate of speed as to endanger the life,
limb, and property of the plaintiff and users of the said
public road at the point in question.

"(c) In failing to keep a proper lookout, when by so
doing plaintiff could have been seen, and the street car
could have stopped, and signals given, in time to have
avoided the accident.

"(d) In violating its own rules and failing to bring the
street car down to a slow rate of speed and to stop at the
point in question, in accordance with signs maintained there-
at.

"(e) In that, knowing that the said track was on a down
grade at the place in question, and that the street car line
was very close to the road in question and crossing the
traveled way in question, the defendant Columbia Railway,
Gas & Electric Company failed to take extra precautions by
running the street car slowly, keeping an extra lookout to
prevent the possibility of injuring the plaintiff or others at
the point in question.

"(f) In that, knowing that the plaintiff and others were
working on the car in question, closely adjacent to the track
here in question, the defendant Columbia Railway, Gas &
Electric Company, its agents and servants, failed and re-
fused to bring the street car under control and to keep an
extra lookout in order to prevent an accident at that point."

These alleged acts of negligence relate to two distinct situations in which the plaintiff was placed, or placed himself, and purport to define the duty of the street car company to the plaintiff under these situations, respectively: (1) He was at work upon an automobile parked very near the street car track; (2) he was attempting to cross the street car track at a point where a commonly used path crossed the track and terminated at the curbing of the paved highway.

It is of interest to inquire, therefore, what duty the street car company owed to the plaintiff, in the situation first described, while he was at work upon an automobile parked very close to the street car track.

It is unquestionably the law that, where a person is, or with the exercise of the care which the situation requires, should be, discovered in a position of peril, it becomes the duty of the operator of the harmful instrumentality to give such warning as the occasion may require to prevent the threatened injury.

It is very clear that, while the plaintiff was at work upon the repair of his automobile, situated as it was, at least six feet in the clear of the line of motion of the street car, he was not in such a position of danger as would require warning of the approach of the car. As he was at the time in a safe position, the motorman had the right to assume that he would so continue.

Even in cases where the person injured was discovered in a position of danger, in the absence of evidence of physical disability, the operator of the harmful instrumentality has the right to act upon the assumption that such person will remove himself from the zone of peril.

It was so held in the case of *Dix v. Atlantic Coast Line R. Co.*, 98 S. C., 492; 82 S. E., 798, where the Court said:

"When he first saw deceased [on the track], there was nothing to indicate to him that he was not in possession of

all his senses.    He had the right to assume that he was, and that he would get out of the way, and it appeared to him that he was going to do so."

The Court cites the case of *Cable Piano Co. v. Southern R. Co.,* 94 S. C., 143; 77 S. E., 868, and quotes with approval from that case:

"As there was nothing to indicate that the driver of the team was not in possession of his faculties, the engineer had a right to assume that he would exercise them, and not drive upon the track in front of the approaching train."

It appears logical, therefore, to conclude that, if the motorman, discovering a person *in danger,* has the right to assume, in the absence of evidence of helplessness, that he would get out of danger, the motorman, discovering a person *not in danger,* has the right to assume that he will not project himself into danger.

It may be, though we are not to be understood as so declaring, that, when a person is engaged in a lawful enterprise, so close to a street car track that, while performing his work, he may probably inadvertently get within the line of the car's movement, common humanity might suggest a warning of the car's approach, so that he might not get within the zone of danger.

Even if this rule should be declared as law, it would not referred to applicable, it would have to be assumed that the plaintiff was not injured in prosecuting the work in which he was engaged (it may be assumed), within the knowledge of the motorman.    That work had been completed, and the mechanic had been paid and released.    To render the rule referred to applicable, it would have to be assumed that the fact that the motorman saw, or should have seen, the plaintiff at work on his car, near the track, should have carried to him notice that, after the car had been repaired, the work completed, the plaintiff would attempt to cross the track for the purpose of going to the spring for a bucket of water.    It would have to be assumed that the motorman knew that the

work had been finished; that the radiator had to be filled with water; that there was a spring on the opposite side of the railroad; and that the plaintiff would probably go to it with his bucket.

So much for the necessity of giving warning to the plaintiff of the approach of the car, based upon the knowledge which it may be assumed that the motorman had, that the plaintiff was working upon his car in close proximity to the only means of locomotion possessed by the street car.

We will next consider the obligation resting upon the motorman, in reference to the second situation assumed by the plaintiff, his attempt to cross the track.

The great aphorism has been credited to Chief Justice Gibson of the Supreme Court of Pennsylvania, which in a nutshell contains the law of negligence: "Precaution becomes a duty only where there may be reasonable ground to apprehend injury."

Tried by this square, there can be no doubt as to the correct conclusion. The motorman not only had no reasonable ground to apprehend that the plaintiff, situated as he was, would attempt to cross the track, but the most reasonable ground to think that he would not. Of all men in the world who would least be expected to depart from the natural course of his progression, and strike out across a railroad track, the man who had spent 4½ hours repairing his car, assumes the first place. To charge the motorman with a reasonable apprehension that the plaintiff would under the circumstances probably make the effort would be to attribute to him the most subtle powers of clairvoyance or divination. He must be assumed to have known that the work upon the car was finished; that in that work the water from the radiator had been drawn off; that it had to be replenished; that there was a spring at the end of a path near there; and that the plaintiff would probably have recourse to it, and not to the numerous other sources at hand.

The case of *Cornelius v. St. Ry. Co.* (Ky.), 93 S. W., 643, is strikingly in point: There a covered ice wagon had drawn up and stopped alongside of, and within a few feet of, the car track on a public street. It was facing the direction from which the car was coming. The plaintiff, a boy of nine years, was upon the rear step of the ice wagon, not in view of the street car. A companion of the plaintiff struck at him with a whip, when the plaintiff jumped away from it, and attempting to get out of the way, jumped upon and started to run across the track at the time the car was passing, and was injured by a collision with it. The Court sustained a verdict for the defendant, saying:

"Street railways necessarily and nearly always operate upon public streets where wagons and pedestrians are as a matter of right. This is a fact known to everybody. But it is not true, as a matter of fact, that the mere proximity of a wagon to a street car line, but not near enough to be struck by a passing car, is notice that there is somebody behind the wagon who may suddenly leave his position and attempt to cross the track. It is the duty of the motorman in charge of the car to keep a lookout at all times for persons using the common highway. His failure to do this is negligence, because it is not such care as ordinarily careful and prudent persons would ordinarily exercise under the same or similar circumstances. *But unusual, unforeseen, and extraordinary conduct of pedestrians or drivers of vehicles in the street need not be anticipated by the motorman.*"

"It is not negligence for a car driver or motorman to operate his car in the usual manner at a point where there is another car on the opposite track, or another vehicle near the track, if he has no reason to anticipate that persons may come on to the track from behind such other car or vehicle; but, if he has reason to anticipate such an occurrence, * * * it is his duty to take such circumstances into consideration and to operate his car accordingly, as by sounding the bell

or gong, reducing the speed of the car, and if necessary, stopping it."   36 Cyc., 1515.

In the case of *Furey v. St. Ry. Co.*, 203 Mass., 434; 89 N. E., 531; 24 L. R. A. (N. S.), 1304, the plaintiff, a young woman, was walking in a path along a space of about 3 feet between a fence and a passing car, when her dress was drawn by the current of air caused by the moving car and caught by the car, by reason of which she was dragged with it and injured.   In sustaining a verdict for the defendant, the Court said:

"The motorman, in view of all the circumstances, had no reason to apprehend that the car would endanger the plaintiff.   We see no negligence on the part of the defendant."

In addition to this, it appears from the testimony adduced by and for the plaintiff that the motorman could not possibly have had time to avoid the collision after the plaintiff began his attempt to cross the track.   According to his testimony, he took only four steps from the place where the bucket lay to the nearest rail—not more than 12 feet.   Assuming that his initial movement was sufficient notice to the motorman that he was going to cross, that the car was moving 20 miles an hour—an excessive estimate under the testimony—and that he was moving 5 miles an hour, the car could not have been more than 48 feet from the point of the collision *when the plaintiff picked up the bucket;* and, of course, much less than that after the plaintiff's purpose to cross had become evident.   The fact conceded by the plaintiff's witnesses, that the car was brought to a standstill within 8 feet from where the plaintiff lay, is significant both as to the normal speed of the car and of the prompt effort of the motorman to stop after the plaintiff's peril had been disclosed.

But aside from all this, and assuming that the motorman was negligent in not sounding the warning of the car's approach, no other reasonable inference can be drawn from the evidence than that the plaintiff was guilty of such contributory negligence as to bar his recovery of damages.

He was familiar with the situation; had been working within 6 feet of the car track for nearly five hours; had seen car after car pass up and down. As he himself testified, there had been "quite a few" passing from where he was at the front of the automobile he had a perfectly clear view of the track, up the hill, for *600 feet,* and all that he had to do to discover whether a car was approaching would have been to turn his head and use his eyes. He does not claim to have done so; and, even if he had so claimed, his statement could not be accepted as evidence, in view of the absolute physical fact that, if he had looked, he would have seen.

If he had looked as he picked up the bucket, when the car could not have been more than 50 feet from him, and had failed to see it, that did not justify him in relaxing his vigilance, which should have continued up to the moment he stepped upon the rail. That he would have seen the car coming within that interval is established by the fact that both the mechanic and his son, who were further away than he, saw it, and realized his peril, and shouted the warning to him; the son making an effort to grab and pull him back.

Confining ourselves to the testimony adduced on behalf of the plaintiff:

Harry Anderson, the plaintiff's first witness, testified that he was standing on the front platform, by the side of the motorman; that there was absolutely nothing to keep the plaintiff from seeing the street car at least 300 or 400 feet before it got to him.

Mrs. Johnson testified that she was sitting near the front of the car looking out of the front window; that it looked to her as if just as the plaintiff stepped on the track the car hit him.

C. H. Leitner, Jr., testified that the plaintiff started to cross the track diagonally, facing slightly up the hill, in the direction from which the car was coming; that all that the plaintiff would have had to do to see the car coming was *to glance up;* that the track was straight for more than a block;

that he saw the car coming, and tried to pull his father back.

Dr. Williams testified that he was driving a block away, going into Columbia, looking in the same direction that the plaintiff should have looked, and could plainly see the car after it had stopped.

"A person working in a public street on or near street railroad tracks must exercise ordinary care to watch for and avoid injury from passing cars and other dangers attendant upon the operation of the road, the degree of care required depending upon his familiarity with the running of the cars and other circumstances of the particular case; and, if he fails to exercise such care, whereby he is injured, he is guilty of contributory negligence precluding a recovery." 36 Cyc., 1529.

"In accordance with the above rule, a person is guilty of contributory negligence precluding a recovery for injuries received where he goes upon or attempts to cross a street railroad track without exercising ordinary care to look and listen for an approaching car which is in close proximity, and which by ordinary care he could see or hear in time to avoid the accident, and where he goes upon a track without looking or listening when he knows that cars are passing every few minutes. * * *" 36 Cyc., 1540.

The Courts of South Carolina have expressed themselves clearly as to the duty of one coming on the track to use his senses. In the case of *Cable Piano Co. v. Southern Railway,* 94 S. C., 143; 77 S. E., 868, the Court said:

"The law imposes upon every capable person the duty of observing due care for his own safety, when about to cross a railroad track, which necessarily involves the exercise of his senses. And, while it is ordinarily a question of fact for the jury to say whether, under the circumstances of the particular case, the traveler did exercise such care, when the facts are undisputed and susceptible of only one inference it becomes a question of law for the Court. *Zeigler v. Railroad Co.,* 5 S. C., 221. *Edwards v. Railway,* 63 S. C., 271;

41 S. E., 458. *Bamberg v. Railway,* 72 S. C., 389; 51 S. E., 988. *Osteen v. Railway,* 76 S. C., 378; 57 S. E., 196. *Drawdy v. Railway,* 78 S. C., 379; 58 S. E., 980. *Griskell v. Railway,* 81 S. C., 193; 62 S. E., 205. In this case plaintiff's driver did not observe the slightest care for his own safety, or that of the property in his custody, and the failure to observe such a slight precaution as to look for approaching trains, before driving upon the crossing, was gross negligence. The evidence warrants no other inference than that his failure to look was the sole cause of the accident, or at least, a proximate contributing cause. Therefore, defendant's motion to direct the verdict should have been granted."

In the case of *Chisolm v. Railroad,* 121 S. C., 394, 401, 114 S. E., 500, 503, the Court said:

"A railroad company and a traveler on a highway crossing are charged with a mutual duty of keeping a lookout for danger, and the degree of vigilance required of both is in proportion to the known risk; the greater the danger, the greater the care required of both. *Edwards v. Railway,* 63 S. C., 288; 41 S. E., 458. *Johnson v. S. A. L. Ry. Co.,* 163 N. C., 431; 79 S. E., 690, Ann. Cas., 1915-B, 598. *Railway Co. v. Hansbrough's Adm'x,* 107 Va., 733; 60 S. E., 58.

"On reaching a railroad crossing and before attempting to go upon the track, a traveler must use his senses of sight and hearing to the best of his ability under the existing and surrounding circumstances; he must look and listen in both directions for approaching trains, if not prevented from so doing by the fault of the railroad company, and to the extent the matter is under his control must look and listen at a place and in a manner that will make the use of his senses effective. This is merely a statement in the concrete of the fundamental principle of the law of negligence that 'ordinary prudence requires every person who is in the full enjoyment of his faculties of hearing and seeing, before attempting a

dangerous act or operation, to exercise them for the purpose of discovering and avoiding peril.' 20 R. C. L., 113.

"Applied, as it must be, in connection with the rule next stated, it is in accord with the settled law of this jurisdiction. *Mack v. Railroad Co.,* 52 S. C., 340; 29 S. E., 905; 40 L. R. A., 679; 68 Am. St. Rep., 913. *Edwards v. Railway Co., supra. Bamberg v. Railroad Co.,* 72 S. C., 389; 51 S. E., 988. *Drawdy v. Railroad Co.,* 78 S. C., 374; 58 S. E., 980. *Osteen v. Railway Co.,* 76 S. C., 368; 57 S. E., 196. *Cable Piano Co. v. Railway,* 94 S. C., 143; 77 S. E., 868.

"The duty of the traveler arising under the foregoing rule is not an absolute one, but may be qualified by attendant circumstances. The view taken in this State is that it is ordinarily a question for the jury in the application of the standard of due care to say whether the attempt of the traveler to cross without looking and listening effectively was excusable or culpable; that is, whether or not it amounted to negligence or willful misconduct. *Zeigler v. Railroad Co.,* 5 S. C., 221. *Edwards v. Railway Co.,* 63 S. C., 271; 41 S. E., 458. *Bamberg v. Railroad,* 72 S. C., 392; 51 S. E., 988. The true form of the inquiry is: Could the traveler by the reasonable use of his senses in the performance of his duty to look and listen under the circumstances surrounding him have discovered the proximity of the approaching train in time to avoid the accident? 28 R. C. L., p. 1041. *Bamberg v. Railroad, supra. Cable Piano Co. v. Railway, supra.*

"The facts and conditions which may qualify the duty and excuse the failure to look and listen within the foregoing rules are usually: First, where looking and listening would not have availed to avert the injury; second, where the traveler enters upon the track under an express or implied assurance of safety, as where gates are open or signals are given by watchmen; third, the presence of some imminent danger or emergency, not brought about by the traveler's own negligence; fourth, the presence and influence of unusual or extraordinary conditions, not created or controlled

by the traveler himself, and especially where such conditions are brought about by the railway company, which are sufficient to distract and divert the attention of a man of ordinary prudence and self-possession from the duty of looking and listening effectively for an approaching train.    22 R. C. L., p. 1035.    3 Elliott on Railroads, § 1173.    *Callison v. Railway Co.* [106 S. C., 123; 90 S. E., 260], *supra*.    *Mack v. Railway Co.*, 52 S. C., 324; 29 S. E., 905; 40 L. R. A., 679; 68 Am. St. Rep., 913.    *Bamberg v. Railroad Co., supra*.    *Douglass v. Railway Co.*, 82 S. C., 71; 62 S. E., 15; 63 S. E., 5.    *Cooper v. Railroad*, 140 N. C., 209; 52 S. E., 932; 3 L. R. A. (N. S.), 391; 6 Ann. Cas., 71.    *Lorenz v. Burlington, C. R. & N. R. Co.*, 115 Iowa, 377; 88 N. W., 835; 56 L. R. A., 753.    *Grant v. Oregon T. & Nav. Co.*, 54 Wash., 678; 103 P., 1126; 25 L. R. A. (N. S.), 925."

These holdings are entirely in accord with the decisions of other States and the United States.

In *Brommer v. Railroad Co.*, 179 F., 577; 103 C. C. A., 135; 29 L. R. A. (N. S.), 924, the Court said:

"His failure to stop, look, and listen, at a point where stopping and where looking and where listening would have prevented the accident, directly contributed thereto."

In *Railroad Co. v. Houston*, 95 U. S., 697; 24 L. Ed., 542, the Court says:

"But, aside from this fact, the failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety.    Negligence of the company's employees in these particulars was no excuse for negligence on her part.    She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger.    Had she used her senses, she could not have failed both to hear and to see the train which was coming.    If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable

negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant."

In *Northern P. R. Co. v. Freeman,* 174 U. S., 379; 19 S. Ct., 763; 43 L. Ed., 1014, the Court says:

"The duty of a person approaching a railway crossing, whether driving or on foot, to look and listen before crossing the track, is so elementary and has been affirmed so many times by this Court, that a mere reference to the cases of *Railroad Co. v. Houston,* 95 U. S., 697 [24 L. Ed., 542], and *Schofield v. Chicago & St. Paul Railway Co.,* 114 U. S., 615 [5 S. Ct., 1125; 29 L. Ed., 224], is a sufficient illustration of the general rule."

Again:

"Judging from the common experience of men, there can be but one plausible solution of the problem how the collision occurred. He did not look; or if he looked, he did not heed the warning, and took the chance of crossing the track before the train could reach him. In either case he was clearly guilty of contributory negligence."

In *St. Louis & S. F. Ry. Co. v. Cundieff,* 171 F., 319; 96 C. C. A., 211, the syllabus reads:

"Plaintiff, while walking across a railroad track at a crossing on a dark and foggy evening, was struck and injured by a freight train which backed against him and was moving at a speed of not more than five or six miles an hour. He was a railroad man and was familiar with the crossing. Witnesses introduced by him testified that they saw the train at a distance of not less than 30 feet, and there was no obstruction to prevent plaintiff from hearing or seeing it if he had stopped and looked and listened before stepping on the track. Held, that he was chargeable with contributory negligence as matter of law, which precluded his

recovery; that in view of the other testimony and of the physical facts his own testimony that he did so stop and look and listen was not entitled to credence, and did not create a conflict of evidence."

In *Chicago, M. & St. P. R. Co. v. Bennett,* 181 F., 799; 104 C. C. A., 309, the syllabus is as follows:

"The negligence of the servants of railroad companies in failing to sound whistles or ring bells on the approach of their trains to crossings constitutes no excuse for the failure of travelers on the highways to discharge their duty to exercise reasonable care to look and listen effectively to avoid collisions before they enter upon railroad tracks."

And:

"Where a plaintiff upon a highway, approaching a railroad crossing, cannot look or listen effectively without stopping, it is his duty to stop and look and listen before entering upon the railroad, and a failure so to do is fatal to his recovery, if such failure contributes to his injury.

"If his view is obstructed, then he must listen more attentively and carefully. If his eyes are useless, and there is any noise or confusion which he controls, such as that of horses' feet, or the rumbling of a wagon, or the grinding of brakes, which interfere with the acuteness of his hearing, it is his duty to stop such noise or interfering obstruction and listen for the train before going upon the track."

In the case of *Hines v. Smith* (C. C. A.), 270 F., 132, the Court, in passing on this very point, said:

"Nor will he be permitted to say that he did not see what he must have seen, had he looked, or that he did not hear what he must have heard, had he listened."

In the case of *McKinley v. Metropolitan St. Ry. Co.,* 91 App. Div., 153; 86 N. Y. S., 461, the testimony of the injured person that he looked and "did not see" its approach before he started to cross the street in front of it is impeached by uncontradicted facts showing that the car was in plaintiff's mind, and he therefore either did not look at all

or did not look with care.   His credibility is not involved so as to take the case to the jury.

In the case of *Barrie v. St. Louis Transit Co.,* 102 Mo. App., 87; 76 S. W., 706, it was held that, where, in an action for damages by a collision between a car and plaintiff's wagon, the physical facts show that, if the plaintiff had looked before driving on the track, he could have seen the car, his testimony that he looked, but did not see the car, should be withdrawn from the consideration of the jury.

"In an action for injuries to a pedestrian, who, in crossing street with double-track railway of an interurban line, was struck by a car running at a dangerous speed without signal on the second track, on which he entered without looking or listening after leaving curb over 40 feet away, though he had an open view for 500 feet, held, that defendant was entitled to a judgment of nonsuit on the ground of plaintiff's contributory negligence."

"Where a city street largely given over to railway traffic is unpaved except at the crossing, and has double tracks which are open and unballasted, with exposed ties and T-rails projecting their full height above the street level, and are utilized by an interurban car line, the rules of caution applicable are those applicable to the steam railway rather than those applicable to street car traffic."

Headnotes, *Riney v. Pac. Elec. Ry. Co.,* 45 Cal. App., 145; 187 P., 50; Street Railroads, Key No. 117 (23), also 81 (1).   *Starck v. Pacific Electric R. Co.,* 172 Cal., 277; 156 P., 51; L. R. A., 1916-E, 58.

"It is evident that plaintiff could have avoided this injury by the most casual use of his sense of sight or hearing at almost any point between the two tracks, notwithstanding the excessive rate of speed of the car and failure of the motorman to sound a reasonable warning."

"Although there was an open view for 500 feet, and his hearing was good, he says he neither saw nor heard any indication of an approaching car."

*Riney v. Pac. Elec. Ry. Co., supra.*

"Whether or not a railway is a street railway does not depend on the motive power. *Nichols v. A. A. & Y. S. R. Co.,* 87 Mich., 361; 49 N. W., 538; 16 L. R. A., 371. *McNab v. United Ry., etc., Co.,* 94 Md., 719; 51 A., 421. Various features are to be considered. Among those are the location and method of construction of the track, the manner of the operation of the cars, and the general purpose of the enterprise.   *   *   *"

"An accident occurred within the city limits at a street intersection, where for a considerable distance in either direction the track was laid on a private right of way which was fenced. The track was laid with customary railroad T-rails above the ground, except that at crossings the rails were flush with the ground, and the intersections were open, but protected with cattle guards, and had signs 'Look out for the cars.' The track was used by both interurban and local cars. Deceased was struck by a local car running for the greater part of its course over the city streets, and, after leaving the streets, over the defendant's private right of way to the city limits, and stopping at street crossings on signal."

Headnote, *Simoneau v. Pac. Elec. Ry. Co.,* 159 Cal., 494; 115 P., 320.

Nonsuit sustained. Decedent guilty of contributory negligence as a matter of law. "If Mr. Brown had taken the commonest precautions, the accident would not have occurred." Headlight could be seen for 700 feet—man stepped on track. *Brown v. Pac. Elec. Ry. Co.,* 167 Cal., 199; 138 P., 1005.

"There is no such difference between an electric railway in the country and a steam railway as to render what would be contributory negligence as respects crossing a steam railway due care as respects crossing an electric railway." Headnote. The reason for the rule is that speed in country is greater where the tracks are exposed and unballasted and

not for public use. *McNab v. United Rwys. & Elec. Co. of Balt. City,* 94 Md., 719; 51 A., 421.

The rule as to the duty of the traveler to use reasonable care for his own safety has in no sense been relaxed by the Courts. The fact is the Courts seem to enforce it more rigidly than heretofore, as shown by the decision of the Supreme Court of the United States in the case of *Baltimore & Ohio R. R. Co. v. Dora Goodman, Adm'x of Nathan Goodman,* No. 58; 275 U. S., 66; 48 S. Ct., 24; 72 L. Ed.— Supreme Court of the United States, filed October 31, 1927, in which Mr. Justice Holmes said:

"This is a suit brought by the widow and administratrix of Nathan Goodman against the petitioner for causing his death by running him down at a grade crossing. The defense is that Goodman's own negligence caused the death.

"At the trial the defendant asked the Court to direct a verdict for it, but the request and others looking to the same direction were refused, and the plaintiff got a verdict and a judgment which was affirmed by the Circuit Court of Appeals, 10 F. (2d), 58.

"Goodman was driving an automobile truck in an easterly direction and was killed by a train running southwesterly across the road at a rate of not less than 60 miles an hour. The line was straight but it is said by the respondent that Goodman 'had no practical view' beyond a section house 243 feet north of the crossing until he was about 20 feet from the first rail, or, as the respondent argues, 12 feet from danger, and that then the engine was still obscured by the section house.

"He had been driving at the rate of 10 or 12 miles an hour but had cut down his rate to 5 or 6 miles at about 40 feet from the crossing. It is thought that there was an emergency in which, so far as appears, Goodman did all that he could.

"We do not go into further details as to Goodman's precise situation beyond mentioning that it was daylight and that he was familiar with the crossing, for it appears to us plain that nothing is suggested by the evidence to relieve Goodman from responsibility for his own death. When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train, not the train stop for him.

"In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near, he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution he does so at his own risk.

"If at the last moment Goodman found himself in an emergency it was his own fault that he did not reduce his speed earlier or come to a stop.

"It is true as said in *Flannelly v. Delaware & Hudson Co.,* 225 U. S., 597, 603; 32 S. Ct., 783; 56 L. Ed., 1221; 44 L. R. A. (N. S.), 154, that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the Courts. See *Southern Pacific Co. v. Berkshire,* 254 U. S., 415, 417, 419; 41 S. Ct., 162; 65 L. Ed., 335.

"Judgment reversed."

As to Exception No. 5:

This exception charges error in admitting in evidence over defendants' objection Rule 280 of defendant railway company. The rule as set forth at page 90 of the record is as follows:

"Motormen must exercise great care when passing a vehicle alongside of the track. They must ring the gong

vigorously to attract the attention of the person driving as a warning not to pull in ahead of the car, and run cautiously until the vehicle is passed in safety."

The objection to the introduction of the rule was based upon its inapplicability to the situation of the automobile of plaintiff and the prejudicial effect of its introduction under the allegations of the complaint and the facts developed on the trial.

In considering this exception, it must be borne in mind that this accident did not occur on a street or highway. At the scene of the accident, the street car line is on the private right of way of the street car company, and plaintiff's automobile was parked, being repaired, near the curb of the paved highway, and some 3 or 4 feet distant from the ends of the cross-ties of the street car track. Leaving Elmwood Avenue, the street car line is in the center of North Main Street, and so continues to the top of the hill overlooking Smith Branch; then it leaves North Main Street entirely, and is distant from the street some 50 feet or more; thence down the hill it gradually gets nearer to the street until at the trestle across Smith Branch; it is distant probably 2 or 3 feet from the street curb, thence to Hyatt's Park the track continues on the car company's private right of way. It is permissible to park automobiles against the curb on North Main Street and its extension to Hyatt's Park.

Plaintiff's specifications of negligence and willfulness (a) and (c) were as follows:

"(a) In failing to ring any gong or to give any warning whatsoever to the plaintiff that a street car was approaching, in time for him to avoid it."

"(c) In failing to keep a proper lookout when by so doing plaintiff could have been seen and the street car could have been stopped and signals given in time to have avoided the accident."

Among the most vigorously contested questions in the case, as shown by the record, were, first, whether the gong

had been sounded, and, second, whether or not the defendant was obligated to sound a gong at the point of the accident.

It therefore seems too evident for argument that, if Rule 280 was not applicable to the situation, nothing could have been more prejudicial to defendant than to permit its introduction in evidence.

The object and purpose of Rule 280 is clearly expressed in the rule itself, viz.: "They must ring the gong vigorously to attract the attention of the person driving as a warning not to pull in ahead of car. * * *".

Manifestly this rule applies only to vehicles being driven on the street where the car line is occupying some portion of the street.

In this case: A. The automobile was not being driven, it had been parked at the point for more than three hours. B. It was parked facing away from the street car, and could not, even if being driven, pull in ahead of the street car. To construe the rule as applicable to parked cars might easily result in forcing a motorman to continuously ring his gong from one end of his run to the other, to the exclusion of numerous other duties.

The first case in which the admissibility of rules come before this Court was *McCormick v. Street Railway Co.,* 85 S. C., 455; 67 S. E., 562; 21 Ann. Cas., 144. There the introduction of an admittedly applicable rule was sustained, although it was pointed out that there is a conflict of authorities on the point. Apparently the decision permits the introduction of rules and proof of disobedience in order to show the mental attitude of the servant in the discharge of his duties to his master and of his master's duty to the public. But certainly, if the rule was inapplicable, the failure of the servant to put the rule into effect would not disclose his mental or other attitude toward the master or any other person.

The Court having ruled in the presence of the jury that Rule 280 was applicable and admissible, the jury was clearly influenced prejudicially. One of the important questions for their solution was the degree of care required by ordinary prudence, and the admission of the rule as an applicable one clearly took from them the question of the company's duty with regard to giving signals.

The judgment of this Court should be that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for the entry of judgment in favor of the defendants under Rule 27.